RICHARD WOODHAM & WIFE *v.* EDWARD D. CHASE & AL.

Where a debtor, arrested on execution and discharged upon giving bond, surrenders himself at the jail at the expiration of the year, he must remain the entire three hours named in the statute.

His absence from the jail for an hour during this period, although but half a mile distant, and with the knowledge of the jailer, will be a breach of the condition of the bond, even if there had been no purpose in the mind of the creditor to imprison him on the execution, unless this absence of such purpose was so communicated to the debtor, as to amount in law to a waiver of the condition.

It is agreed by the parties that this is an action of debt on a bond in the form, and with the condition, prescribed by statute, signed by the defendant Chase as principal, and the other defendants as his sureties, and given for the purpose of obtaining the release of said Chase from arrest on an execution recovered by the plaintiffs against him; that Chase did not take the oath prescribed for the ease and relief of poor debtors within one year from the date of the bond; but that on the day next after the expiration of said year he went to the jail and jailer's house connected with the jail, at about ten o'clock, A. M., and informed the turnkey and jailer's wife, the jailer himself being absent, and they having the charge of the jail, and of the prisoners therein for him in his absence, that he had come to the jail to surrender himself on said execution as required by the condition of said bond; that said Chase remained in and about the office or public room connected with the jail, and in which persons having occasion to visit the jail were accustomed to be received, until a short time before twelve o'clock, noon, of the same day; that at that time a brother of said Chase living about half a mile from the jail, came to said public room and invited the defendant Chase to go to his said brother's house and take dinner there; that this invitation was

given to said Chase in an open, public manner; that the said defendant Chase then inquired of the turnkey and wife of the jailer whether there would be any objection to his going to the house of his brother to take dinner—to which they replied that they could not tell, but that he must judge for himself; that said Chase then went from the jail, leaving it a few minutes before twelve o'clock, noon, and took dinner with his brother and returned about one, or half past one o'clock, P. M., on the same day, and remained in and about the said office and public room openly and with the knowledge of the turnkey and wife of the jailer from the time of his return till after four o'clock, P. M., of the same day, and that no person appeared at said jail at any time on said day, having execution against said Chase, or any process for his arrest or with the intent and purpose of ascertaining whether he was at said jail from twelve o'clock, noon, till four o'clock, P. M., on said day.

It is agreed that judgment be ordered by the court for the plaintiffs or the defendants, as it may be held that the defendants are or are not liable upon the bond on the foregoing facts.

*Lord & Sulloway*, for plaintiffs, contended that a surrender at one, or half past one, o'clock, was in no sense a surrender at twelve, and remaining until three o'clock, and they cited *Sewell* v. *Holbrook*, 22 N. H. 269; *French* v. *Wingate*, 17 N. H. 264; and also 22 Pick. 571, 573.

*G. Y. Sawyer & Sawyer jr.*, for defendants, contended among other things that the only object of the statute in this provision is, that, after the debtor has so surrendered himself, he shall remain at hand within the reach of the jailer or other officer, coming to the jail with process for his arrest during the hours limited. He must be considered to be at the jail, if in its vicinity, with the jailer's knowledge, ready for the arrest.

The primary meaning of the word "at," among others, is "near to," *vide* Webster's Dictionary. The statute is to receive a reasonable construction. The debtor, though required to be *at* the jail, is not, therefore, necessarily or upon any reasonable view of the intent or spirit of the act, to be *in* it or in contact *with* it. Is he to remain constantly in the presence of the jail-keeper? to confine himself to any particular room? to the limits of the jail building, or of the jail premises? or may he step into the street, or to a friend's house in the neighborhood, or elsewhere in the vicinity if he has occasion, provided always he informs the jailer of his movements so that he may be in readiness for the arrest, when process for it is produced?

If in good faith the debtor, after surrendering himself, remains *about* the jail, keeping the jailer informed of his movements, when he has occasion to go out from under his eye, and is at hand ready for arrest in case the creditor's execution is presented, it would seem to be all that the statute aims at in requiring him "to remain at the jail."

BELLOWS, J. Two questions arise upon the facts agreed; first,

whether the debtor was at the jail from twelve o'clock at noon, until three o'clock in the afternoon; and if not, whether the fact that the creditor was not there to charge him in execution will save the forfeiture.

It appears that the debtor came to the jail a short time before twelve o'clock, and properly announced his purpose to the sheriff's servant, having charge of the jail, but, with the knowledge of the servant, left the jail a few minutes before twelve o'clock to dine with his brother about a half a mile distant, and was gone until one, or half past one o'clock.

During this time we think he was not at the jail, actually or constructively, within the meaning of the law. The statute requires in terms, that the "debtor surrender himself up to the keeper of the jail in the county where he was originally arrested or committed, and remain at said jail from twelve o'clock at noon till three o'clock in the afternoon of said day."

To constitute a valid surrender, the debtor must make known to the jailer who he is, and the purpose of his coming, and in short, must do that which would enable the officer having the execution to arrest and commit the debtor; and this has been so strictly construed as to hold that a statement by the debtor to the jailer's wife after having inquired for the jailer himself, that he supposed he was one concerned in the execution which he named, without stating which party he was, was not a sufficient surrender. *French* v. *Wingate*, 17 N. H. 264. But no objection is made here to the surrender, and the case cited is in point more especially as showing the nature of the compliance which is required.

The object of requiring the debtor to remain at the jail during the time specified is to enable the creditor to arrest him there if he choose to do so, and at any time during the whole period of three hours. The purpose is not to give security that the debtor shall at that time be within the reach of the officer having the execution so that he can arrest him, but that he shall be at the jail ready to be taken and imprisoned; and therefore no return upon the execution that he could not be found, is required. The debtor has in fact been already arrested and imprisoned upon the execution, and has been permitted to go at large for a year upon his giving security that he will return to his imprisonment at the end of the year, if he does not before that time take the poor debtor's oath.

The remaining at the jail must be actual, so that the officer coming there at any time during those three hours would find him at the jail; and it would not be sufficient that he was enabled to learn that he had been there, and could now be found at another place a half a mile distant; neither would it be sufficient if after the surrender he had concealed himself at the jail for a part of the time, instead of openly remaining there. If the debtor was at liberty to be absent for an hour or an hour and a half, and at the distance of half a mile, upon what principle could it be said that he might not be at a distance of a whole mile, or anywhere within the town, or even anywhere within the officer's precinct?

A construction which should save the forfeiture in this case, would

impart to this provision a looseness and uncertainty which, we think, was never contemplated by its framers, and we have no hesitation in holding that while the debtor was at his brother's, he was in no sense remaining at the jail within the meaning of this law.

Upon the question whether the forfeiture was saved by the fact that the creditor was not there to charge the debtor in execution, we have reached a satisfactory conclusion, and that is, that the forfeiture is not saved.

There is nothing in the law, we think, that furnishes any reason for dispensing with the surrender upon the ground that the creditor would not have charged the debtor in execution—the provision requiring such surrender contains no such condition, nor is it to be implied from the nature of the case. The terms are explicit, that he shall surrender himself and remain at the jail from twelve until three o'clock, and so is the condition of the bond; and the fact that the creditor had determined not to charge the debtor in execution could not affect the obligation of the latter, unless so communicated to him as to amount to a waiver of it.

In *French* v. *Wingate*, 17 N. H. 264, there was no evidence of any purpose to charge the debtor on execution; and it would seem that it had not been lodged with the jail-keeper.

In *Scovill & Wife* v. *Holbrook*, 22 N. H. 269, the creditor had been cited to appear at the jail at ten o'clock in the forenoon of the day following the expiration of the year, on the debtor's application to take the poor debtor's oath; and the creditor with his attorney appeared and opposed the application, examining the debtor upon oath; but he was allowed to take the poor debtor's oath, after which, and before one o'clock, the debtor left the jail and did not again return. It was held that there was a breach of the bond, because the poor debtor's oath had not been taken within the year, nor had the debtor remained at the jail the whole three hours, and yet it appeared that no execution had been issued since the return of the one on which the debtor had been arrested. This is a strong authority for the position, that the obligation of the debtor to surrender himself and remain at the jail, the three hours, is not affected by the mere absence of a purpose to charge him in execution.

In that case of *Scovill* v. *Holbrook*, it may be said that the creditor might, and perhaps would, have obtained an alias execution and charged the debtor had he remained at the jail, instead of leaving before one o'clock, and thus broken the condition of the bond. So in the case before us, the creditor might have charged the debtor had he not learned that he was absent from the jail during a portion of the three hours, and that the bond was thereby forfeited. We, however, put our decision upon the ground, that, to save the forfeiture, the debtor must have surrendered himself and remained at the jail the whole of the time specified; and that the mere absence of any purpose to charge him in execution could not affect this obligation.

There must, therefore, be

*Judgment for the plaintiffs.*